SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

ANDREW S. HUANG (CABN 193730)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, California 94612-5217
   Telephone: (510) 637-3680
   Facsimile: (510) 637-3724
   E-Mail: andrew.huang@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07 00443 CW |
|    Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT OMAR ALEJANDRO GUTIERREZ URZUA |
| v. | |
| OMAR ALEJANDRO GUTIERREZ URZUA | Hearing Date: November 28, 2007<br>Hearing Time: 2:00 p.m. |
| a/k/a Alexander Vasquez Valentin, Saul Delgadillo, and Carlos Ibarra | |
|    Defendant. | |

**I.**

**INTRODUCTION**

On September 12, 2007, defendant Omar Alejandro Gutierrez Urzua pled guilty to the sole count in the Indictment, distribution of methamphetamine in violation of 21 U.S.C. §§ 842(a)(1) and (b)1)(A)(viii). On November 15, 2007, the United States Probation Office ("USPO") disclosed its final presentence report ("PSR") for the defendant in the in the above-captioned case. While the government is in substantial agreement with the contents of the PSR and the USPO's sentencing recommendation, this memorandum seeks to clarify two points:

UNITED STATES' SENTENCING MEMORANDUM
CR 07 00443 CW

(1) the applicability of a two-level increase under U.S.S.G. §3B1.4 for the defendant's use of a minor in the commission of the offense, and (2) the defendant's ineligibility for "safety valve" consideration under U.S.S.G. §§ 2D1.1(b)(7), 5C1.2, and 18 U.S.C. § 3553(f).

## II.

### DEFENDANT'S USE OF A MINOR IN COMMITTING THE CRIME

The USPO correctly applies a two-level enhancement under U.S.S.G. §3B1.4, which provides for such an increase "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense ." See PSR ¶ 24; Addendum to PSR ¶¶ 2, 3. The courts have held that "[a] defendant only uses a minor in the offense if he 'acted affirmatively to involve the minor in the crime.'" See United States v. Preciado, __F.3d__, __, 2007 WL3171419, *1 (9th Cir. 2007) (per curiam) (quoting United States v. Parker, 241 F.3d 1114, 1121 (9th Cir.2001)). Further, the use of minor enhancement must be "'supported by a preponderance of evidence.'" See Preciado, __F.3d at __, 2007 WL3171419 at *1 (quoting United States v. Castro-Hernandez, 258 F.3d 1057, 1059 (9th Cir. 2001))

In the present case, such a preponderance of evidence exists to establish that defendant acted affirmatively to involve his girlfriend Evangelina Gonzalez' son, Jonathan, who was four years old at the time, in his distribution of methamphetamine offense. The objective facts are not in dispute. Defendant admitted that on April 4, 2007, "I brought a four year old boy to this transaction [that is the subject of the Indictment]." Plea Agreement ¶ 2. In his proffer to the government on October 23, 2007, the defendant admitted that the venture with Jonathan began in the morning of April 4, 2007, when he took Jonathan with him to pick up methamphetamine from his supplier in the parking lot of a Richmond, California restaurant. As captured on videotape, he arrived later in the afternoon around 2:00 p.m. with Jonathan at the point of sale in El Sobrante, California where the boy was present and frolicking in close proximity as drugs and money exchanged hands. See PSR at ¶ 9. At the conclusion of the transaction, Jonathan interprets for the defendant when he requests a bag from the buyer to hold the money. See id. As disclosed by the defendant in his proffer, defendant proceeded to Napa to drop off Jonathan

UNITED STATES' SENTENCING MEMORANDUM
CR 07 00443 CW                                    2

with either Gonzalez or her relatives before heading back to Richmond to deliver the proceeds of the sale to his supplier.

      The use of minor enhancement applies when a defendant uses a child as a "decoy" to avoid detection by law enforcement. Castro-Hernandez, 258 F.3d at 1060; accord Preciado, __F.3d at __, 2007 WL3171419 at *1. The courts have typically looked to circumstantial evidence to establish such intent. See Preciado, __F.3d at __, 2007 WL3171419 at *1 (noting "evidence that the defendant had a ready child care alternative or that he brought children along to a previously planned crime supports a finding that the minors were used to avoid detection") (citing United States v. Jimenez, 300 F.3d 1166, 1169 (9th Cir. 2002); Castro-Hernandez, 258 F.3d at 1061). Here, Gonzalez, defendant's girlfriend and Jonathan's mother confessed to law enforcement upon defendant's June 7, 2007 arrest that defendant took Jonathan as "cover" on several transactions in order to avoid detection by police. See PSR ¶ 13. Several other factors circumstantially corroborate this direct evidence of defendant's intent. First, defendant was not Jonathan's sole child care option. Defendant and Gonzalez have an infant daughter. Gonzalez' relatives in Napa cared for the daughter, and presumably could have cared for Jonathan, when Gonzalez was at work. Second, defendant kept Jonathan with him only when drugs were present or exchanging hands. Defendant and his buyer arranged for the transaction around 11:00 a.m. According to his proffer, he picked up the methamphetamine in the morning with Jonathan, but the sale did not occur until approximately 2:00 p.m. Only after the drugs were sold did defendant go out of his way, approximately 30 miles, to take Jonathan to Napa before heading back to Richmond to deliver the proceeds. Finally, defendant took children with him to other drug transactions. According to Gonzalez, defendant took Jonathan with him to "four or five" other drug transactions. At the time of defendant's arrest, defendant was driving Gonzalez and their infant daughter. The front passenger was a man carrying methamphetamine. Defendant admitted in his proffer that this man was defendant's co-conspirator in selling drugs and on that occasion the co-conspirator was holding the methamphetamine.

//

//

UNITED STATES' SENTENCING MEMORANDUM
CR 07 00443 CW                          3

# III.
# INELIGIBILITY FOR SAFETY VALVE

**A.    Five Factors Must Be Satisfied to Receive Safety Valve Benefit**

Pursuant to U.S.S.G. §§ 5C1.2(a)(1)-(5) and 18 U.S.C. §§ 3553(f)(1)-(5), a defendant may be sentenced below an otherwise applicable statutory mandatory minimum sentence, and receive a two-level guideline level reduction if:

(1)    the defendant does not have more than 1 criminal history point;

(2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense;

(3)    the offense did not result in death or serious bodily injury to any person;

(4)    the defendant was not an organizer/leader; and

(5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The defendant bears the burden of proving safety valve eligibility by a preponderance of the evidence. United States v. Mejia-Pimental, 477 F.3d 1100, 1104 (9th Cir. 2007).

Under the terms of the Plea Agreement, defendant agreed to the following conditions precedent before safety valve provisions could apply: "If Probation finds that I meet the requirements of U.S.S.G. § 5C1.2(a)(1)-(4) and *the Government finds* that I have truthfully debriefed with them within the meaning of § 5C1.2(a)(1)(5)." Plea Agreement ¶ 7.d (emphasis added). In so agreeing, defendant has given the Government full discretion in determining whether defendant has provided a truthful, complete disclosure of his conduct under §5C1.2(a)(1)(5). On October 23, 2007, defendant, in the presence of defense counsel and with the assistance of a court-certified interpreter, met with the Government for purposes of satisfying this requirement. Defendant was given every opportunity to give a complete, truthful proffer, but failed to do so. Before the conclusion of the proffer, the Government informed defendant that he had not satisfied the final safety valve requirement and offered him one last opportunity to correct his statement, but defendant declined.

UNITED STATES' SENTENCING MEMORANDUM
CR 07 00443 CW                                            4

B.      **Requirement That Defendant Truthfully Provide Government With Information**

The fifth requirement that the defendant truthfully provide all information and evidence the defendant has concerning the offense or offenses includes uncharged related conduct that is part of the same course of conduct or common scheme or plan.  See United States v. Miller, 151 F.3d 957, 958 (9th Cir. 1998) (defendant must truthfully divulge information and evidence regarding uncharged related conduct); United States v. Thompson, 81 F.3d 877, 879 (9th Cir. 1996) (phrase "all information and evidence" is broad and no limit is placed on the type of information that must be provided).  Accordingly, "section (5) of the safety valve provision has been termed a 'tell all you can tell' requirement." United States v. Shrestha, 86 F.3d 935, 939 (9th Cir. 1996) (quoting United States v. Acosta-Olives, 71 F.3d 375, 379 (10th Cir. 1995)).

The Ninth Circuit in Shrestha went on to state the information defendant must provide includes, "details concerning other parties to the crime, such as the source who provided defendant with the drugs and other persons in the chain of distribution, if known." Shrestha, 86 F.3d at 939.  Indeed, in Thompson, the Ninth Circuit explicitly held that, "defendant must give the Government *all* the information he has concerning the offense, *including* the source of his drugs, to avail himself of the benefit of § 5C1.2." Thompson, 81 F.3d at 880 (emphases in original).

While the parties in the present case agreed to give the government discretion in determining the truthfulness of defendant's safety valve proffer, it is worth noting the criteria that sentencing courts follow in such evaluations.  "[A] sentencing court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts." United States v. Marquez, 280 F.3d 19, 24 (1st Cir. 2002).  The Courts of Appeals have recognized that sentencing courts may properly rely on their experience in drug cases.  See, e.g., United States v. Hatchett, 31 F.3d 1411, 1420 (7th Cir. 1994) (concluding that a sentencing judge may rely on his own experience with drug cases because "[j]udges in the federal system... do not operate in a vacuum, shielded from knowledge of drug operations in the real world") (citation and internal quotations omitted).  In addition, a district court may assess the truthfulness and completeness of defendant's account by gauging its plausibility.  See, *e.g.,* United States v. Blake,

116, F.3d 1202, 1204 (7th Cir. 1997) (holding that the district court did not clearly err in denying the defendant safety valve relief because it was implausible that he had forgotten the name, telephone number and address of everyone he had dealt with in the drug business).  As one court has explained, the government is free to identify "suspicious omissions" in a drug defendant's safety valve proffer, and the district court is free to make "common sense judgment[s]."  United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

C.     **Defendant's Failure to Render a Complete, Truthful Account About the Offense and Other Related Conduct**

During his October 23, 2007 safety valve proffer, defendant made several incredible statements and assertions indicating his lack of candor to the government.

   1.  *Defendant's Use of a Minor*

As detailed in Section II above, the evidence establishes that defendant used Jonathan to avoid detection by law enforcement from the time he picked up the drugs through the time he sold the drugs.  During his proffer session, defendant implausibly denied using Jonathan as cover, stating that he did not need such cover because he had a valid driver's license should he be stopped by law enforcement.

   2. *Defendant's Identity*

Defendant operated under the Alexander Vasquez Valentin identity at the time of the offense.  During his proffer, defendant refused to give a truthful accounting of how he assumed this identity.  Instead, he gave a fantastic account of how he found a birth certificate and social security card in that name while he was painting a house in the Bay Area and subsequently drove to Los Angeles in order to apply for a drivers license in that name.  When challenged about why he drove all the way to Los Angeles, he tried to explain that it was easier to apply for a license in Los Angeles because they are more accommodating of Spanish speakers.  When questioned about his real identity, he proffered that his true name is Omar Alejandro Gutierrez Urzua and that he entered the United States on a valid visa, but simply overstayed his visa.  Government databases have no record of a visa being issued to an "Omar Alejandro Gutierrez Urzua" with his date of birth.

### 3. *Sale of Methamphetamine to the Informant and Related Information*

Defendant proffered that he began selling methamphetamine sometime during the previous year and that he had only one supplier and one buyer. He claimed that he met the buyer when he was purchasing drugs from the buyer for his own personal use. He then claimed that the buyer introduced him to her supplier so that defendant could obtain drugs from the supplier to sell to the buyer. This assertion, of course, makes no economic sense as it suggests that the buyer voluntarily added an additional layer of markup costs to her own supply chain.

Defendant also initially insisted that he worked alone and that he only sold to the same buyer 27 times. Defendant eventually contradicted himself when asked about the front passenger in the car he was driving at the time of his arrest. He admitted that this man had been his co-conspirator for approximately five months, but insisted that the co-conspirator only delivered drugs to defendant's sole buyer, drugs which only the defendant provided to him, and drugs which were only supplied by defendant's sole supplier. This assertion similarly defies economic logic as it introduces an extra business cost to defendant while adding to his risk by introducing additional money and drug exchanges to each sale. Only when confronted with two additional names did defendant finally admit that he sold drugs to those individuals, too, but only in smaller quantities.

On several occasions throughout the proffer session, the government admonished defendant about the importance of being truthful. In an effort to coax truthful statements from the defendant, the government confronted him with certain facts and offered defendant the opportunity to correct and augment the information he provided, but defendant declined and persisted in his less than candid account.

## IV.
## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court (1) apply a two-level increase under U.S.S.G. §3B1.4 because defendant used a minor during his distribution of methamphetamine, and (2) determine that defendant is ineligible for "safety valve" consideration under U.S.S.G. §§ 2D1.1(b)(7) and 5C1.2, and 18 U.S.C. § 3553(f) because he has

UNITED STATES' SENTENCING MEMORANDUM
CR 07 00443 CW                              7

failed to truthfully provided the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. As properly calculated by the USPO and pursuant to the Plea Agreement, defendant's ultimate guideline offense level is 31, which results in an advisory guideline range of 108 to 135 months at criminal history category is I. The government further respectfully requests that, in light of the advisory guideline range, the mandatory minimum sentence of 120 months and the sentencing factors set forth in section 3553(a), the Court sentence defendant to 120 months imprisonment, impose a five-year term of supervised release (under the terms and conditions recommended by the USPO), and order defendant to pay a $100 special assessment.

DATED: November 21, 2007              Respectfully submitted,


                                      SCOTT N. SCHOOLS
                                      United States Attorney


                                      _____/s/_____
                                      ANDREW S. HUANG
                                      Assistant United States Attorney