IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER VASQUEZ VALENTIN,<br>a/k/a Omar Alejandro Gutierrez Urzua, Saul Delgadillo and Carlos Ibarra,<br><br>    Movant,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent.<br>_____ | No.  C 08-05508 CW<br>     CR 07-00443 CW<br><br>ORDER DENYING MOVANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE |

Movant Alexander Vasquez Valentin[1], a federal prisoner incarcerated at Taft Federal Correctional Institute, filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Respondent opposes the motion.  Having considered all of the papers filed by the parties, the Court DENIES the motion.

BACKGROUND

The following facts are taken from Movant's plea agreement

---

[1] Petitioner filed this motion under the alias Alexander Vasquez Valentin, and has also used the names Saul Delgadillo and Carlos Ibarra.  Movant's Ex. A at 3.  During his plea agreement interview, he revealed his true name to be Omar Alejandro Gutierrez Urzua.

and the documents and transcripts in the criminal case entitled <u>United States v. Urzua</u>, CR 07-00443 CW.  On July 12, 2007, an indictment was filed in the Northern District of California, charging Movant with the distribution of a Schedule II controlled substance, namely, approximately 107.9 grams of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).  Movant entered into plea negotiations with the government.

A plea agreement was reached and on September 12, 2007, Movant entered his plea.  In the plea agreement, Movant agreed to plead guilty to the charge of distribution of methamphetamine.  Plea Agreement ¶ 1.  According to the plea agreement, the charge carried a lifetime maximum prison sentence, with a ten year mandatory minimum.  Movant also agreed to the Sentencing Guidelines calculation set forth in paragraph 7.  This calculation set Movant's base offense level at 32, based on § 2D1.1 of the United States Sentencing Guidelines (U.S.S.G.).  Because he plead guilty, the agreement contemplated that Movant would receive a three-point reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.  The agreement also contemplated the possibility of a two-point "safety valve" reduction which could be applied if "Probation finds that [Movant meets] the requirements of U.S.S.G. § 5C1.2(a)(1)-(4) and the Government finds that [Movant has] truthfully debriefed with them within the meaning of § 5C1.2(a)(1)(5)."  Plea Agreement ¶ 6.  Finally, the agreement provided that "the government may argue that [Movant] used a person less than eighteen years of age to assist in avoiding detection of, or apprehension for, the

offense and, therefore, a 2-level increase applies pursuant to U.S.S.G. § 3B1.4." Id.

In the agreement, Movant further agreed not to appeal or file any collateral attack on his conviction or sentence, including any petitions under 28 U.S.C. § 2255 with the exception of a claim that his constitutional right to effective assistance of counsel had been violated. Plea Agreement ¶ 5.

On October 23, 2007, Movant was interviewed in the presence of his attorney, William Daley, at the United States Attorney's office in Oakland, California. According to the Federal Bureau of Investigation report summarizing the October 23 interview, Assistant United States Attorney Andrew S. Huang advised Movant that his plea to the offense of distribution of methamphetamine carries a mandatory minimum sentence of ten years in prison. Movant's Ex. A at 3. Huang also advised Movant that he could be eligible for a safety valve exception to the mandatory minimum sentence if he provided all relevant information and evidence concerning the offenses that are part of the same course of conduct to which he plead guilty. "Huang stressed to [Movant] that the most important part of this requirement was that [Movant] be truthful throughout the proffer session. Huang advised [Movant] that this required a complete recitation of all the details of the events." Id.

The FBI report states that Movant agreed to provide Huang with all requested information after being informed of the requirements of the safety valve. Id. Movant stated that his true name is Omar Alejandro Gutierrez Urzua and gave all of his aliases. He stated

3

that he entered the United States on a tourist visa issued by the United States consulate in Guadalajara, Mexico under the name Alejandro Gutierrez Urzua.  He had no explanation for the lack of a record of a visa in his name.  Movant stated that while he was working painting a house in California, he found a Social Security card and birth certificate from Puerto Rico in the name of Alexander Valentin Vazquez, and that he used them to obtain a California driver license in that name.

Movant stated that he obtained methamphetamine from an individual he called "Galina."  Galina's real name is Armando Navarro.  Movant would meet with Navarro in different restaurants and parking lots in North Richmond.  According to Movant, Navarro paid him fifty dollars for every ounce of methamphetamine that he sold.  Movant stated he sold methamphetamine approximately two times a week and that he only sold methamphetamine for Navarro. Movant stated he met a woman who called herself Yolanda when he was purchasing methamphetamine from her for his personal use, and that he then began selling methamphetamine to her for Navarro.  Movant repeated that he had only one supplier, Navarro, and only one customer, Yolanda.

At this point in the proffer session, Huang reminded Movant of the importance of truthfulness, and warned him that it was difficult to believe his claims about the limits of his methamphetamine trafficking and about the origins of his California driver license.  After conferring with his counsel, Movant continued talking about his drug dealing.  He stated that, on April 4, 2007, his girlfriend, Eva Gonzalez, was working in Napa,

4

California. Gonzalez's and Movant's newborn daughter was being cared for by Gonzalez's family. Movant took Gonzalez's four-year-old son with him when he delivered methamphetamine to Yolanda. He denied allegations that he took the child as a "cover" or to prevent being stopped by the police. After selling the methamphetamine to Yolanda in El Sobrante, Movant went to Napa to leave the child with Gonzalez's relatives. Movant proceeded to the Tapatillo Restaurant to pay Navarro and then returned to his home in El Sobrante. He denied that he used the child to translate for him, although he acknowledged that he speaks primarily Spanish, Yolanda speaks only English and the child speaks both.

Movant again denied that he sold or delivered narcotics to anyone other than Yolanda. However, when Huang asked Movant about specific people, such as "Chino" and "Rudy," he admitted that he had sold methamphetamine to them and to several other people as well. When Huang asked who Alfredo Ramirez was, Movant admitted that Ramirez had been helping him distribute methamphetamine twice a week for five months, that Ramirez had never met Navarro and that he only delivered to Yolanda.

At the end of the proffer session, Huang told Movant that his account was largely unbelievable and asked him if he would like to add or change anything in his statement. Movant stated his remorse, but offered no additional facts and added that everything he had said during the proffer session was true.

On October 25, 2007, the government filed its response to the probation department's draft Presentence Investigation Report (PSR), arguing that the two-point enhancement for the use of a

5

child was proper and that Movant was not eligible for safety valve relief.

At the sentencing hearing on November 28, 2007, Movant's attorney, Mr. Daley, argued that the safety valve reduction should be given to Movant because he "fully and completely disclosed to the government." Sentencing Tr. at 3. The Court stated that it agreed with the government's analysis that Movant's story did not make economic sense. Id. at 4.

Mr. Daley also argued that Movant should not receive the enhancement for the use of a minor because Movant did not intend to employ the child in his drug deal, but brought him because no one else was available for child care. Id. at 3. Mr. Daley could not dispute that "the son did translate the word bag at the very end of the transaction." Id. The Court also noted that Movant's girlfriend had acknowledged that Movant had taken the child to other drug transactions on "a few occasions." Id.

The Court noted that, without the safety valve, the enhancement for the use of a minor was irrelevant because, even if the enhancement were not added, the Court would be required to impose the 120-month mandatory minimum. Mr. Daley agreed that the enhancement issue was moot if Movant did not receive the safety valve reduction. Id. at 6. The Court found that Movant had not been truthful with the prosecutor, and as a result it imposed the mandatory minimum sentence. The Court sentenced Movant to 120 months in prison, followed by five years of supervised release. On December 6, 2007, the Court entered judgment. Docket No. 22. On December 8, 2007, Movant filed this motion under § 2255.

6

LEGAL STANDARD

I. Section 2255 Motions

A prisoner, in custody under sentence of a federal court, making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Section 2255 was intended to alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement by providing an equally broad remedy in the more convenient jurisdiction of the sentencing court. United States v. Addonizio, 442 U.S. 178, 185 (1979). Under 28 U.S.C. § 2255, a federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

In reviewing a § 2255 motion, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The motion must provide specific factual allegations which, if true, state a claim on which relief could be granted. United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

II. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel guarantees effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim,

a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. Id.

To show that counsel's performance was deficient, a defendant must show that the performance fell below an objective standard of reasonableness. Id. at 688. The relevant inquiry is not what counsel could have done, but whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

The defendant must also show that counsel's deficient performance resulted in prejudice to the defendant. To do this, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. Id. at 697; Williams v. Calderon, 52 F.3d 1465, 1470 (9th Cir. 1995).

DISCUSSION

Movant contends that he received ineffective assistance of counsel because his attorney failed to argue that Movant was entitled to a safety valve reduction in his sentence and failed to object to the enhancement for the use of a minor child in the crime. These claims fail.

8

I. "Safety Valve"

Movant asserts that his counsel failed to argue that Movant made a complete and truthful statement to the government and therefore satisfied all five factors for the safety valve reduction. The government contends that Movant's counsel did argue that Movant was entitled to safety valve relief, and that counsel's performance on this point cannot be considered objectively deficient.

Pursuant to U.S.S.G. §§ 5C1.2(a)(1)-(5) and 18 U.S.C. §§ 3553(f)(1)-(5), a defendant may receive a two-point reduction and be sentenced below an otherwise applicable statutory mandatory minimum sentence if five factors are satisfied. At issue here is the fifth factor, which requires that

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a)(5); 18 U.S.C. § 3553f(5). Under the terms of the plea agreement, Movant agreed that the safety valve would apply "[i]f Probation finds that I meet the requirements of U.S.S.G. § 5C1.2(a)(1)-(4) and the Government finds that I have truthfully debriefed with them within the meaning of § 5C1.2(a)(1)(5)." Plea Agreement ¶ 7.

The legislative history of this "safety valve" provision of the Mandatory Minimum Sentencing Reform Act states that the

9

provision attempts to remedy the plight of first-time non-violent drug offenders who played a minor role in the offense and who have made a "good-faith effort to cooperate with the government," even though their knowledge may be of little or no use to the government, rendering them ineligible for reduction under the substantial assistance provision of the guidelines. United States v. Shrestha, 86 F.3d 935, 938-39 (9th Cir. 1996). The safety valve provision authorizes district courts to grant relief to defendants who have made a good faith effort to provide the government with complete information by the time of the sentencing hearing. Id. at 940.

Mr. Daley's actions in regard to the safety valve reduction were not deficient or unreasonable. At the sentencing hearing, Mr. Daley argued as forcefully as the facts allowed that Movant met the safety valve reduction requirements. Mr. Daley argued to the Court that he and Movant had met with the government for an hour and that Movant fully disclosed all he knew about his drug transactions. However, at the proffer session with the government, when given the opportunity, Movant provided no believable explanation for how he entered the country, how he obtained his false identification, or why he did not reveal the names of other individuals who were involved in his drug transactions. The government has not merely argued, "We don't believe the defendant," and nothing more, as Movant claims, but instead has pointed to specific inconsistencies and lies contained in Movant's proffer statement.

Movant faults Mr. Daley for not filing a written memorandum, but Mr. Daley had no factual basis for filing a memorandum and was

10

obliged to use his best judgment. Movant claims he suffered prejudice as a result of Mr. Daley's failure to file a sentencing memorandum. Movant's Traverse at 7. In order to show prejudice, Movant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. Strickland, 466 U.S. at 694. Because Movant was clearly dishonest during the proffer session, a memorandum filed by Mr. Daley would not have had a reasonable probability of affecting the Court's decision to deny the safety valve reduction. Movant was not prejudiced by his counsel's failure to raise meritless arguments on his behalf. Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982). Accordingly, Movant's claim for ineffective assistance of counsel on the basis of the safety valve reduction is denied.

II. Use of a Minor

Movant asserts that Mr. Daley was ineffective in failing to argue against the enhancement for the use of a minor in committing his offense. Movant claims that the child's presence at the scene of the drug transaction and the child's translation of a word during the transaction do not meet the requirements of "using a minor to commit a crime." Movant's Traverse at 10. The government argues that Movant was using the child as a cover in furtherance of the crime and, alternatively, that this enhancement had no effect on Movant's sentence.

United States Sentencing Guidelines § 3B1.4 provides for a two-point increase in offense level "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit

11

the offense or assist in avoiding detection of, or apprehension for, the offense." A defendant only uses a minor in the offense if he "acted affirmatively to involve the minor in the crime." United States v. Parker, 241 F.3d 1114, 1121 (9th Cir. 2001).

Again, Movant errs in alleging his counsel failed to object to the enhancement for the use of a minor. Mr. Daley did object to the enhancement, stating that Movant maintained that the child was with him because of child care responsibilities. Sentencing Tr. at 3. Mr. Daley could not deny that the child translated the word bag at the end of the drug transaction, nor could he contradict the evidence that Movant's girlfriend stated he had taken the child with him to several other drug transactions. However, Mr. Daley made the only argument that he could, that Movant did not intend to involve the child in the crime. Although the Court did not accept this argument, Movant's claim that Mr. Daley did not properly object to the enhancement fails. Mr. Daley reasonably made the objection that the evidence allowed him to make. Therefore, Mr. Daley's performance was not deficient.

Furthermore, Movant was not prejudiced by Mr. Daley's representation in regard to the enhancement. Mr. Daley reasonably agreed with the Court that the enhancement for the use of a minor was moot if the Court did not grant Movant the safety valve reduction because, without the safety valve reduction, Movant could not be sentenced to less than 120 months. Because the Court denied the safety valve reduction, the enhancement for the use of a minor had no impact on Movant's sentence, and Movant could not have been prejudiced by it. Therefore, the claim for ineffective assistance

12

of counsel on the basis of the enhancement for the use of a minor is denied.

## CONCLUSION

For the foregoing reasons, Movant's motion under 28 U.S.C. § 2255 is DENIED.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated: 7/23/09

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

Copies mailed to counsel as noted on the following page

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

USA,

        Plaintiff,

v.

ALEXANDER VASQUEZ VALENTIN et al,

        Defendant.

Case Number: CV08-05508 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 23, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Alexander Vasquez Valentin 98218-111
Taft Correctional Institution
P.O. Box 7001/A3C
Taft, CA 93268

Andrew Suian Huang
United States Attorney's Office
Criminal Division
1301 Clay Street
Suite 340S
Oakland, CA 94612

Dated: July 23, 2009

        Richard W. Wieking, Clerk
        By: Sheilah Cahill, Deputy Clerk

14